## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 09 2018, 10:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Emilee A. Hammond
Deputy Public Defender

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Pierce,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

November 9, 2018

Court of Appeals Case No.
18A-PC-679

Appeal from the Switzerland
Circuit Court

The Honorable W. Gregory Coy,
Judge

Trial Court Cause No.
78C01-1511-PC-350

**Tavitas, Judge.**

## Statement of the Case

Daniel Pierce appeals the post-conviction court's ("PC court") denial of his petition for post-conviction relief ("PCR") after Pierce's resentencing for child molestation, a Class A felony. We reverse and remand with instructions.

## Issue

Pierce raises two issues on appeal, which we restate as a single issue of whether the trial court violated Pierce's Sixth Amendment right to counsel, entitling Pierce to PCR.[1]

## Facts

The underlying facts of this cause were set out in our supreme court's opinion in *Pierce v. State,* 29 N.E.3d 1258, 1261-63 (Ind. 2015):

> In November 2011, a caregiver discovered seven-year-old K.P. naked in a closet with her three-year-old half-brother. She was

---

[1] The second issue Pierce raises is that "Indiana Code Section 35-20-2-2(i) did not limit the trial court's discretion to change Pierce's aggregate sentence." Appellant's Br. p. 2. We decline to address this issue independently as it is a free standing claim and not one of two issues we will consider in a petition for PCR. *See Lindsey v. State,* 888 N.E.2d 319, 325 (Ind. Ct. App. 2008). In *Bailey v. State,* our supreme court addressed free standing claims and held:

> any issue set forth in a post-conviction petition must be raised within the purview of the post-conviction rules, e.g., deprivation of the Sixth Amendment right to effective assistance of counsel, or be an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal. Therefore, in a post-conviction petition an allegation of the denial of the petitioner's due process rights may not be raised in the "free-standing" form of an allegation of fundamental error.

472 N.E.2d 1260, 1263 (Ind. 1985).

taken to the Child Advocacy Center, and during a forensic interview, K.P. indicated her grandfather, Daniel Pierce, had molested her. K.P. revealed Pierce would kiss her on her mouth and touch her "front private" with his hand. Tr. at 48-49. He also tried to use his mouth on her front private, but she "got away from him." Tr. at 64. More than once, Pierce showed her "bad stuff" with naked people doing "nasty stuff" on his computer. Tr. at 53-54. K.P. saw him touch his penis with his hand. He tried to get her to touch his penis, getting "mad" and saying he would give her a dollar, but she "never listened to him." Tr. at 64. Pierce also joined her in the bathtub or shower.

Based on K.P.'s allegations, Detective Kip Main began a criminal investigation and interviewed Pierce's two step-granddaughters, V.H. and B.H., as well as his great niece, A.R. Twelve-year-old V.H. regularly spent the night at Pierce's house, usually by herself. One of those nights, she fell asleep and awoke to Pierce on top of her, "rubbing [her] breasts and [her] vagina area"; despite her attempts to push him off, "he just kept going on with it." Tr. at 94. And on more than one occasion, he placed his mouth on her vagina over her underwear. She would sometimes wear a piece of red lingerie when Pierce would touch her. V.H. also saw Pierce "play" with his penis until "white stuff" came out, which he would put in a cup. Tr. at 97. Thirteen-year-old B.H. would stay over at Pierce's house about twice a month. Once, while she was watching television on the bed, he laid down next to her and "rubbed [her] back and [her] stomach and [her] boobs," first over B.H.'s shirt and then underneath it. Tr. at 73-74. Finally, fourteen-year-old A.R. said Pierce would hug her from behind and cup her breasts for five or ten seconds. He also had her sit between his legs so he could rub her stomach while they watched a movie. When Pierce drove her home after a visit, he told her a story about his penis coming out of his pants.

Pierce's wife, Lori, is paralyzed and requires care in their home. Several of Lori's caretakers observed Pierce interact with the girls in ways they did not think were appropriate. Taffy Scudder noticed Pierce would have the girls sit in his lap, hug them, and "pat them on the tush," but he would push away the boys. Tr. at 86-87. While cleaning, Barbara Stout found a box in Pierce's closet that contained a printout of a pornography site called "Barely 18" showing very young girls performing oral sex, and she found nightgowns with the straps tied to fit the girls. Holly Taylor saw V.H. come out of Pierce's bedroom wearing red, see-through lingerie. She also found pornography in Pierce's nightstand. When Brittany McGowand once walked into Pierce's bedroom, K.P. jumped up from laying in his lap with "this look on her face like she was in the wrong." Tr. at 146. Brittany, too, found pornography in Pierce's nightstand. On two occasions, Melody Reese found Pierce and K.P. in the bathroom while one or both of them were in the shower.

A month after K.P.'s interview at the Child Advocacy Center, Pierce was admitted to a mental health facility, apparently due to stress over the allegations against him. From the facility, he contacted Lori and asked her to remove his computers from the home. Lori's caretaker Melody overheard Pierce's request and made arrangements for the computers to be delivered to law enforcement. The internet history on Pierce's computer showed visits to several pornographic websites with "an overwhelming theme of young girls in compromising positions and videos related to that nature of girls." Tr. at 242. Some of the domain names visited included "PappaF***Me.com, FirstTimeWithDaddy.com, F***MeDaddy.org, [and] TrickyOldTeacher.com." Tr. at 245.

The State charged Pierce with ten counts: three of child molesting as a Class A felony (Counts 1 and 9, naming V.H. as the victim, and Count 10, naming K.P. as the victim), five of child molesting as a Class C felony (Count 2, naming V.H. as the

victim, Count 3, naming K.P. as the victim, Count 6, naming A.R. as the victim, and Counts 7 and 8, naming B.H. as the victim), and two of child solicitation as a Class D felony (Count 4, naming V.H. as the victim, and Count 5, naming K.P. as the victim). Pierce moved to sever the charges, but the trial court denied that motion.

*Pierce,* 29 N.E.3d at 1261-63.

[4] The State consented to dismissing Count X after the close of the State's case. The jury convicted Pierce of all the other counts, except Count VI. Pierce was sentenced to an aggregate sentence of thirty-eight years with eight years suspended. Pierce was also determined to be a credit restricted felon.

[5] This court and our supreme court reviewed several issues on direct appeal. Relevant to this proceeding, our supreme court considered the sentence for Count IX. The initial sentence for Count IX alone was thirty years, with six years suspended. Our supreme court remanded this portion of the sentence, finding:

> As we discussed above, the trial court found V.H. was less than twelve years of age when Pierce committed the offenses against her, including Count 9, Class A felony child molesting, and Pierce was at least twenty-one years of age at that time. There is substantial evidence of probative value to support those findings. Therefore, Indiana Code section 35-50-2-2(i) applies, the suspension is incompatible with the plain language of that statute, and we must reverse Pierce's sentence for Count 9 and remand to the trial court for resentencing on that count.

*Pierce,* 29 N.E.3d at 1271.

[6]	At resentencing on Count IX, the trial court sentenced Pierce to an executed term of thirty years. At the resentencing hearing, Pierce did not have counsel present. There is no indication that Pierce waived the right to counsel, and no indication that a discussion regarding counsel occurred at all. In resentencing Pierce, the trial court said:

> At the time of the original sentencing [on Count IX], I sentenced you to a period of thirty (30) years, with six (6) years suspended on that charge. And the Court of Appeals ruled that that [sic] was an error. That should not, that six (6) years should not have been suspended. So for purposes of sentencing, the original sentencing order will be amended and your sentence will be amended so that Count IX, child molesting, a Class A Felony, you will now be sentenced to an executed term of thirty (30) years.

Petitioner's Ex. 2.

[7]	Pierce filed a *pro se* petition for PCR on November 13, 2015. Pierce's counsel filed an amendment to the petition for PCR on August 10, 2017. After a hearing, the PC court denied Pierce's motion for PCR, stating in part:

> I would note for the record that when the order for the Sheriff's Department to transport Mr. Pierce here for sentencing, he was ordered to appear on Monday, August 17, 2015 at 10:30. The Sheriff was ordered to transport Mr. Pierce from the Department of Corrections to this court for that hearing. On the service list of that order, his appellate counsel was notified, R. Patrick Magrath. Mr. Magrath is a trial lawyer who also does appellate work very extensively here in this part of the State. And this is not part of the record but I would say that my memory, I know that Mr. Magrath contacted the court and did indicate that he did

not intend to appear for that. I don't know if he viewed it as I did but the way I viewed it was, I'm looking at 29 NE 3rd, page 1271, and that is section 4 of the Supreme Court opinion regarding the sentence that we're discussing here. It says "the trial court erred by suspending part of the defendant's sentence" and the last part of that is "we must reverse Pierce's sentence for Count IX and remand to the trial court for re-sentencing on that count". So I read that not to mean that any other counts were to be affected, that the total aggregate sentence was going to be affected by the re-sentence. And I did order that he need to be [sic] back here, only I believe I mentioned in what is now marked as Petitioner's Exhibit 2 and that hearing we brought him back as a courtesy because I do believe he needed to be present. But I don't believe he was denied the opportunity for counsel. There wasn't an appellate lawyer available who could have been present.

Tr. Vol. II p. 9. The PC court denied Pierce's PCR petition in a written order that did not include findings of fact or conclusions of law.

## Analysis

[8] Pierce appeals the denial of his PCR petition. Our supreme court has stated:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. . . . A post-conviction court's findings and judgment will be reversed only

upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made.

*Hollowell v. State,* 19 N.E.3d 263, 268-69 (Ind. 2014) (internal quotations and citations omitted). As the clearly erroneous standard "is a review for sufficiency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses." *State v. Greene,* 16 N.E.3d 416, 418 (Ind. 2014). "Rather, we 'consider only the evidence that supports that judgment and the reasonable inferences to be drawn from that evidence.'" *Id.* (quoting *Ben-Yisrayl v. State,* 738 N.E.2d 253, 258-59 (Ind. 2000)).

[9] In ruling on a PCR petition, the PC court is required to enter findings of fact and conclusions of law on all issues presented. *See* Ind. Post-Conviction Rule 1(6). The Indiana Supreme Court "has made clear that 'it is the duty of the trial judge to relate the facts on which he makes his determination (conclusion) that the petitioner is not entitled to the relief he seeks.'" *Stephenson v. State,* 864 N.E.2d 1022, 1050 (Ind. 2007) (quoting *Davis v. State,* 330 N.E.2d 738, 741 (Ind. 1975)).

[10] The PC court here failed to issue findings of fact and conclusions of law with regard to Pierce's PCR hearing. While the PC court did state that it was aware Pierce did not have counsel present at resentencing, the PC court's written order simply denied Pierce's request for PCR with no written findings or conclusions. This was improper. We still, however, consider the merits of Pierce's petition for PCR, as there does not appear to be any dispute surrounding the facts central to Pierce's petition. *See, e.g., Davis,* 330 N.E.2d at

743 (holding that deficient findings of fact do make the review process "more tedious than would otherwise be required," but finding that there was no harm to the petitioner in this regard).

[11] "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *State v. Hernandez,* 910 N.E.2d 213, 216 (Ind. 2009) (citing *Sanders v. State,* 765 N.E.2d 591, 592 (Ind. 2002)); *see also Lindsey v. State,* 888 N.E.2d 319, 325 (Ind. Ct. App. 2008) ("[a] defendant in a post-conviction proceeding may allege a claim of fundamental error only when asserting either (1) deprivation of the Sixth Amendment right to effective assistance of counsel, or (2) an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal."), *trans. denied.* Other "free-standing" claims are not available for post-conviction review. *See Lindsey,* 888 N.E.2d at 325.

[12] "The Sixth Amendment to the United States Constitution guarantees a defendant the right of assistance of counsel to protect his fundamental right to a fair trial." *Puckett v. State,* 843 N.E.2d 959, 965 (Ind. Ct. App. 2006) (citing *J.W. v. State,* 763 N.E.2d 464, 467 (Ind. Ct. App. 2002)). "Accordingly, a defendant has a right to counsel at all critical stages of a criminal proceeding against him." *Id.* (citing *Adams v. State,* 693 N.E.2d 107, 108 (Ind. Ct. App. 1998)). "[I]t is well settled that sentencing is a critical stage of the proceedings at which a defendant is entitled to representation by counsel." *Id.*

[13] As in *Puckett,* the sentencing hearing transcript indicates that Pierce attended resentencing without counsel, and the record lacks any indication that Pierce knowingly and voluntarily waived his right to be represented at resentencing. *See id.* (noting that "[c]orrelative to the right to counsel is the right of a criminal defendant to waive counsel and represent himself"). There is nothing in the transcript that indicates the PC court asked Pierce to waive his right to counsel or advised Pierce of the risks of proceeding without counsel. Although the PC court noted at the PCR hearing that Pierce's counsel notified the PC court he would not be attending the resentencing, there is no evidence that Pierce was aware of this at the time of resentencing. Based on this record, we cannot say that Pierce made a knowing and voluntary waiver of the right to counsel.

[14] Generally, "[t]he right to the assistance of counsel is so essential that prejudice is presumed when there is actual or [constructive] denial of the assistance of counsel; however, 'denial of this constitutional right is subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless.'" *Black v. State,* 79 N.E.3d 965, 971 (Ind. Ct. App. 2017) (citing *Hernandez v. State,* 761 N.E.2d 845, 849 (Ind. 2002)), *trans. denied.* Here, we do not find Pierce's denial of counsel at resentencing to be harmless. Important to our decision is that our supreme court did not require the trial court to impose a specific sentence upon resentencing—just one that complied with the statute. Our supreme court held that "Indiana Code section 35-50-2-2(i) applies, the suspension is incompatible with the plain language of that statute, and we must reverse Pierce's sentence for Count 9 and remand to the trial court for resentencing on that count."

*Pierce,* 29 N.E.3d at 1271. At the time of Pierce's offense, Indiana Code Section 35-50-2-2(i) stated:

> (i)    If a person is:
>
> > (1) convicted of child molesting (IC 35-42-4-3) as a Class A felony against a victim less than twelve (12) years of age; and
> >
> > (2) at least twenty-one (21) years of age;
>
> The court may suspend only that part of the sentence that is in excess of thirty (30) years.

Ind. Code § 35-50-2-2(i).[2]

[15]    Pierce was convicted of child molestation, a Class A felony. Indiana Code Section 35-50-2-4 addresses Class A felonies. At the time of Pierce's offense, for a person who committed a Class A felony, the statute stated that the person "shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentencing being thirty (30) years." Ind. Code § 35-50-2-4. Therefore, the trial court had discretion so long as the sentence fell within the guidelines of the statute and other applicable laws.[3] The trial court

---

[2] This statute was repealed pursuant to Pub. L. No. 158-2013, § 653 (eff. July 1, 2014).

[3] We note that Pierce's thirty-year sentence was not necessarily in error. The error in this case was that Pierce did not have counsel present at a critical stage of the proceeding, and that counsel could have argued that the sentence should have been less than thirty years.

evidently took our supreme court's ruling to mean that the trial court was required to sentence Pierce to thirty years executed and that it had no other options. We do not believe this to be the case. Pierce is entitled to resentencing with the effective assistance of counsel as required by the Sixth Amendment.

## Conclusion

Based on the foregoing, we conclude the PC court erred in denying Pierce's petition for PCR. Accordingly, we grant the petition for PCR and remand for a resentencing hearing with counsel present for Pierce. The trial court is instructed to follow the resentencing instructions set out in the supreme court's opinion in *Pierce,* 29 N.E.3d at 1271. We reverse and remand with instructions.

Reversed and remanded with instructions.


Brown, J., and Altice, J., concur.